May it please the Court. My name is Bobbi Stratton. I represent the appellants Thomas Whitaker and Perry Williams. This is a case about a meaningful opportunity to be heard, which is founded in our Court's Constitution, particularly in this case having to do with standing and whether or not my clients have the right to bring the case that they brought at the time when they brought it. The District Court dismissed the lawsuit below for lack of ripeness. The Court held that because appellants do not know the means by which the state of Texas will select for their execution, their claim of an injury from that unknown or hypothetical means is not yet ripe. In our appeal, the appellants have raised two issues for the Court's consideration. First, whether or not the District Court's dismissal order conflicts with this Court's jurisprudence, and second, whether the District Court's order the appellant's access to courts. Where did their cases stand? They've been convicted, sentenced. Do they have habeas going on somewhere? Have they gone through the state system? Are they now into the federal system? Are there any constitutional challenges to the conviction still ongoing? They have completed direct review of their cases, and they're in the habeas phase. One of the habeas petitions was resolved during the pendency that this Court, that our brief, after our briefing was completed. So they are final on direct review. And the first issue that we raised in our brief is that the dismissal order actually creates a direct conflict with this Court's jurisprudence about not bringing these types of appeals at the last minute. The District Court's order requires the execution to be imminent, meaning a death warrant has been issued and the date of execution has been set, because until those things happen, my clients will not know the method of execution. That's information that the state typically provides at the last minute, and because of the posture of the execution drugs and the availability of those drugs expiring and or needing to be reacquired, that's something that the litigants won't know, can't know until the last minute. I think the position of the government is that if they were to be executed today or tomorrow, the protocol would be followed that has already been adjudicated in at least two or three published opinions in the circuit that says that that protocol is acceptable. So if they were executed today, the protocol would be acceptable, such that there would be no claim against the current if they had to change the protocol. You don't disagree that the current protocol has been adjudicated to be appropriate, correct? I would agree that the current protocol has been adjudicated in an injunction setting. It's not been adjudicated in a regular setting where the standards are previously before this court with these clients. Their co-plaintiff, Michael Yowell, sought a TRO to halt his execution that was before this court, and the standard in that case was having to prove the standards for a temporary injunction, and those standards specifically being substantial likelihood of success on the merits, and I can tell the court that one of the things that we dealt with at the district court level during that TRO hearing was whether or not he could show, whether or not Mr. Yowell could actually show likelihood of severe pain, and the judge asked me repeatedly during that hearing, how is it that your complaint about compounded pentobarbital will affect this particular person? And the only information that I could provide to the court was general information available about compounded pentobarbital in the community because there was no discovery done on, I mean, we literally found out that they were using compounded pentobarbital, the information about the potency of the drug, and the information about where it was provided from the day before our hearing, and so there was no opportunity to do reasoned discovery in a reasoned time frame. Everything was done at the last minute, which... Since Mr. Yowell was executed, there have been at least three executions in September, or at least two, where this same complaint was made, and the courts, both at the district court and at the circuit level, said that the protocol is acceptable and that that's not any ground, that there's no likelihood of success on the merits. But the standard that... And my point, Your Honor, is that it's the standard that you have to prove that's different between regular litigation and TRO-based litigation. But the likelihood of success on the merits is not... I mean, you still have to show some possibility of success on the merits. There's not been any finding that anybody can show success on the merits. I'm not saying for all time that you could never, but it seems that this is precluded under the current protocol. The standard that you have to show in a non-injunctive setting is risk of future harm, and that's not the same standard as likelihood of severe pain. And the risk of future harm standard which is laid out in our briefing and examples of when compounded pentobarbital was used in other executions, not in the executions in Texas, but in other states, where those particular inmates had some sort of adverse reaction to the drug that was being injected. And so, in addition, there's examples of the use of midazolam, which is a drug that's on hand with TDCJ, as well as hydromorphone, which is a drug that's on hand with the TDCJ. But on hand doesn't mean it's part of the accepted protocol. That is correct. And those drugs are not part of the protocol if they were to execute somebody today. That is correct. So it's speculative to say that because those drugs that just happen to be in their medicine cabinet, so to speak, might... And those have some reactions. Isn't that very speculative to say that... Because we have to assume that if the people were executed today, they would use the protocol. Absolutely. I mean, the state would have to change the protocol before it could use a different drug other than... You could litigate that. I'm sorry? You could litigate the changed protocol just like this protocol has been litigated. Correct. But what the district court has required is that you couldn't litigate that change until literally at the last minute. And then you'd be in another setting... But you wouldn't know there was a change that was applicable until, you say, the last minute. It actually can be several weeks before they announce it. It's not the day before. I mean, these can get down to the day before, but they don't necessarily have to. If... What would the district court litigate in this case about some protocol that doesn't yet exist? The only thing that could be litigated in this case is the existing protocol. It would be speculative. I don't understand what we would send back on this possible hypothetical other protocol. Your Honor, I contend that even if the court were to... I'll try and explain it this way. The TDCJ has the ability to change the protocol at any minute. And the district court's requirement that all litigation on these matters only occur once the inmate knows the exact drug that is going to be used to execute the inmate forestalls their ability to litigate those issues. And, you know, Your Honor, you said sometimes it's days, but sometimes it's also it's weeks. But weeks... It's always weeks. There's always a notice of at least several weeks before the execution. But that's the point, Your Honor. It's weeks. Counsel, what does Harris v. Johnson have to do with this case of any kind? If I recall my notes from Harris. So Harris is one of the cases where the court has admonished appellants for bringing challenges at the last minute. Where the... After the death warrant has been... Correct. At some point after the death warrant has been issued and some point prior to the execution. This court has said that's too late? This court has said that's too late. There's examples of Kinsey v. Livingston, Neville v. Johnson, White v. Johnson, Smith v. Johnson, Harris v. Johnson. All of those cases have kicked the inmate, you know, the appellant in that situation out and denied their relief because it was brought at the last minute. Now... They more recently have litigated these on the merits all the way through. That's correct, Your Honor. But I fall back to the standard that I discussed previously that it's a different standard when you do it in that court. It's not unreasonable to assume that if a prisoner has the right to be free from a demonstrated risk of severe pain when compared to a known and available alternative, he ought to have the opportunity to prove the risk of pain and the availability of the alternatives. That was in this case. And that statement to me means that if you had the opportunity to prove what you're trying to prove for your case, you should have the chance to do that. And I will tell you that that was the district court's concern when I was before him. He kept saying to me over it, tell me what this is going to do to Mr. Yowell. But I couldn't actually give him those examples because I didn't know what the state was going to use to execute him until four o'clock the day before. Okay. Well, I don't know why you didn't know until four o'clock the day before. Perhaps the state can talk about that because normally the protocol is known ahead of time and it's the one that's been in effect for several months. They've had the same protocol at least in effect. But I have a question. If we were to remand and say that you could move forward, what are you moving forward on? Are you moving forward on the current protocol or are you moving forward on the hypothetical universe of any death protocol? That's my problem because the hypothetical universe of any death protocol does seem not right to me. But the current protocol seems right, but the other doesn't. So help me out there. What is it that you want? Sure. So the case as pleaded in our amended complaint is that the state's, there's one thing is that the state's procedure to only reveal the information at the last minute is a violation of the 8th and 14th Amendments. That's one thing. In addition... They don't have that procedure, do they? They reveal it several, they say it's been the same one for months and months. But the challenge, Your Honor, is not the protocol that they're going to be injected with one, with one dose of penobarbital. They are actually injecting these prisoners with compounded penobarbital, which has its own area of issues. So do you want to litigate compounded penobarbital? Is that what you want to go back and litigate? Or do you want to litigate the entire hypothetical universe of death drugs? Um, I would say that one of my co-counsel would probably tell you she'd like to litigate the entire universe of death drugs. Let me, let me tell you, let me tell you what I'd like to hear about that. Okay, sure. Because as I understand it, and I may be wrong, I thought the district court determined that this claim wasn't ripe. Yes. Is that right? Yes. And so all I want to hear is if it got dismissed because it wasn't ripe, then I hope you can help me now, Your Honor. Why? It's because these inmates have been sentenced to death. The U.S. Supreme Court has held in a couple of cases. I'll find them as I'm talking. Greg versus Georgia and Ohio versus adult parole authority that the method of execution implicates due process and they have an interest in avoiding unnecessary wanton of affliction of pain. Um, that in and of itself creates standing to challenge the method of execution. And this court has set, or the district court has said that given an opinion that's in direct conflict with, like I said, the procedure from this court, but also these U.S. Supreme Court holdings, it's forcing the litigation in a days, weeks, or short month period of time, which does not give the opportunity for well and reasoned access to courts. Did the district court indicate in its decision that said it was not right when it thought the matter would be right? No, Your Honor. The statement from the court was just that because that means Texas will, they don't know the means they'll be executed, therefore it is not right. Okay. Could we remand to say that the current means is right, but hypothetical means are not right? Of course. Absolutely. The court could do that. Is that what a reasonable court would do in this situation? I think it's one option that the court would do. I see that I'm actually out of time. I want to know the answer to the question. Okay. Yes, the court could do that. That would not necessarily be unreasonable. And as I started to say earlier, one of my co-counsel in this case would probably say they'd like to litigate the universe because typically that's what they like to do, is litigate the universe of all of these other drugs that aren't in use here in Texas. And typical discovery should allow information about those types of drugs. However, the issue at hand currently is the current protocol. Compounded pentobarbital. The protocol is pentobarbital, but it's being implemented by compounded pentobarbital today. Thank you. I'll reserve the remainder for rebuttal. Thank you. Mr. Cook. Good morning. May it please the court. The district court's dismissal of plaintiff's lawsuit seeking injunctive relief and the identity of the compounding pharmacy that provides the compounded pentobarbital for Texas executions was correct as a matter of law and should be affirmed. I've got a whole argument laid out here, but I think probably the best use of my time would be to address some of your concerns, Judge Elrod. First, the Texas statute regarding the scheduling of execution dates, Article 43.141 of the Texas Code of Criminal Procedure, provides that the warrant of execution can only be entered after all the appeals have everything is taken care of, and then the first date is the 91st day after that day. That's when this claim would be right? I'm sorry? That when this claim would be right? I guess what I'm asking you is, do you agree that that's the reason the district court dismissed their claim? That is precisely. And so at some point, though, you'd have to agree that a claim would be right? Yes. When would it be right? Well, the judge said that at the time the death record 966, well, 965. But then when that happened, don't we have cases that have said, oh, but that's too late? We do have cases that say, oh, but that's too late. So the answer to my when would it be right question is, what? In that period between the time the death warrant is signed and within some short time before the execution is actually conducted. Now, how much time elapses between that death warrant and the actual execution? Well, a minimum of 91 days. All right. The Kinsey case involved a condemned prisoner who was brought his 1983 claim 27 days before his execution. This court found too late. Now, in described a number of similar cases that ranged from zero days. In other words, it brought the suit the day of the execution to 70 days. So the university, all those were too late. All those were too late. All right. So we're down to 10 weeks, 10 weeks, probably too late. But 90 days, 10 weeks, a couple of months. Here's the thing, Judge. Let me just try to make this. I guess I'm just trying to figure out when you believe this window for somebody to step in and file a right claim. How big is that window? I mean, they got to do it the day after the death warrant issues. Is that when they have to do it? What the court said, and I can read for you some of the text from the hearing that we had after Yowell was executed down in Houston. The court said the legal issues will be the same. The only thing that could change is the facts. We're talking about a means. Ms. Stratton said yes. Judge said, I'm pretty certain you got no idea what the state of Texas is going to do. I'll give you three guesses who this judge was. It was Len Hughes, and you'll know immediately from the way he talks. This is just the way he is. The court. So that would be my suggestion is we get the structure. We got the structure. And if you file an amended complaint, and you can just mention your amended complaints, since Whitaker and the other fellow, Williams, don't know what the means will be, they are not prepared to contest it. But as soon as they do know the designated means, they'll look at it and see if they have a complaint. And I asked the court, and that moment will be when the warrant is issued or signed. The court said yes. I'm sorry. But isn't that directly contrary to our precedent in Neville v. Johnson, which says a challenge to a method of execution may be filed at any time after the plaintiff's conviction has become final on direct review, and that's a published case. And so why do we say that there's a night between 90 days and 10 weeks? Why is that new rule when it's directly contrary to our precedent? I would say it's distinguishable for this reason. Let me back up a little bit and give you a little historical perspective on this lawsuit, beginning with the Yowell, Whitaker, and Williams case. That case was filed shortly before Mr. Yowell's scheduled execution. The focus of the complaint, the focus of the complaint, the provenance, the supplier of the compound of pentobarbital, that's what the lawsuit was about. It wasn't about is pentobarbital okay to use in an execution. That's established. It wasn't about the execution protocol itself. That's established. It's been established since July of 2010. It's all about is discovering the source of Texas compounded pentobarbital. I've been assuming, Argumendo, that I might agree with you that that's a quest that the parties are on. I have to look at what the complaint says, and I can't look at what perhaps is the secret but even assuming I agree with you, I can't say, well, all this other stuff is irrelevant. We have to look at what our precedent is on ripeness. Okay, here's the problem that the court faced in Whitaker. It was the first time we were using compounded pentobarbital. The source of it was hotly contested, ultimately disclosed. That supplier tried to claw it back, etc., etc. At the time of the hearing, I want to say it was October 17th, 2013, Texas did not know precisely what it was going to use. It had, the question of can it use compounded pentobarbital was up in the air because the anti-death penalty folks was preventing them from getting the pentobarbital. There was a possibility they would do something else. There was a possibility they could go to hanging. They could have used a firing squad. They might have done any number of things, including they could just abandon the whole proposition altogether. They did not know as of October 2013 what precisely they were going to do. The judge understood that and the judge understood that unless and until we knew what we were going to do, which is what he talks about in the transcript, the case was not ripe. Isn't that more of a merit issue? I mean, it's ripe and the answer can come as we don't know, but it seems like it's being prevented from even getting to that point of the state being able to say we don't know at this point. I hear you, Your Honor. I'm going to try to answer your question by indirectly answering the question of Judge Elrod. What happens if y'all send this back today? You say, Lynn Hughes is off the reservation again. Well, I'm not saying that whatsoever. Nobody in this courtroom has implied that. Go ahead. If that were the case, then the district court would be fully within its rights to look at Hernandez-Iano and all the other cases and say you don't make it on the merits, period. And that would be the end of it. Isn't that what we have to do because of Kensey and Harris and? I think you can distinguish those cases because every single one of those inmates had an execution date. Neither of these do. I think you asked earlier about the status of their habeas and so on. I know Mr. Williams, one of his habeas efforts was rejected. I don't know today where Mr. Whitaker stands, but in any case, neither one of them is scheduled for execution before the spring as it stands today. Neither one of them is scheduled for execution before April. That could be a very long time indeed before. Whether there is enough drug for this, I'm asking is it public, there is enough drug to make it to April? Oh, yes, Your Honor, there is. Texas has subsequently secured a supplier of pentobarbital, a licensed supplier, in the United States. As I believe the Court noted in Trotty, we have plenty of compounded pentobarbital and most importantly, we have an Attorney General's opinion in Texas which prevents us from disclosing the name of that pharmacy, pharmacist supplier. So at this time, as we stand here today, there is really no reason to contest the existing protocol. Well, but they want to. Of course they do. And it's right to do so. Well, we could certainly send it back and the Court will set a short deadline for motions for summary judgment and a motion will be filed and that will be the end of it. But I see that as sort of a, I won't say a waste of time, but I think on this record, as it stands today, you would have the authority to say we're beating a dead horse here. And truly we are. If there was any question in my mind that the plaintiffs were after anything but the identity of our supplier, I might take an entirely different view. And if there's any question about it, they brought a case. In fact, their deposition is going to take as long. I'm trying to restrict my questions to the law in the case. The judge dismissed it not because he determined that they were really trying to find out something. Well, at least he didn't say that. He said a lot. That's what he did say. All right, go ahead. He said, once the death warrant is by which Texas would use to execute them. Until then, the Court said, and this is at 969 in the record, I can't possibly adjudicate whether the means is right. That's the reason why it's not right. Because he cannot possibly adjudicate whether the means that Texas would use to execute Mr. Whitaker and Mr. Williams is right. So he didn't say anything about them trying to find out about a supplier? I'm sorry? He didn't say anything about them trying to find out about a supplier. Is that your point? No, no. At that time, and in a way, Your Honor, this case is a bit of a historical artifact. History has moved on since last October. History has moved on since one year ago today when the Court issued its decision in the Whitaker case. We now know precisely how Texas is going to execute these men. So in that sense, the case is kind of moot. That messes up your rightness argument. That's a concession that messes up the rightness. That says we should litigate this under the current standards. That it's right for that. It'll be a very short litigation based on Trotty. Trotty by itself. You're predicting a quick victory for the government? Is that what you're doing? What's that? You're predicting a quick victory for the government. Is that what you're doing? I don't see how this argument survives Trotty. This Court is obligated to follow Trotty. As far as I know, there's no petition for en banc review. The Supreme Court hasn't taken it up. Trotty is the law of this circuit. And as long as it's the law of this circuit, this case is doomed. I'm sorry. Are there any other questions? Just quickly scan my notes to make sure I haven't forgotten anything. No. Let me just conclude by saying that the District Court's decision was correct as a legal matter, as a matter of logic, and as a matter of common sense. It should be affirmed. The plaintiffs will have plenty of time to litigate the precise means of their execution once a date for their litigation is set. Any other questions? I'm sorry. May it please the Court. Very briefly, the relief that my clients have asked for in the District Court blow is set out in, you know, the prayer of our pleading. To enjoin the defendants from executing them until they can demonstrate the integrity and legality of any and all controlled substances they intend to use for plaintiff's execution. Enjoying the defendants from executing them until they can demonstrate that measures are in place that allow for plaintiff's execution in a manner that complies with the Eighth Amendment of the Constitution. A procedure that ensures timely and meaningful disclosure to plaintiffs of all information deemed relevant to a determination of the constitutionality of their planned execution, and a declaration that defendants' actions violate plaintiffs' Eighth and Fourteenth Amendment rights. You concede that you have a difficult road to hoe after Sells and Trotty, don't you? Absolutely, Your Honor. Yes. Yes. Yes. But you just want the chance to get to go in there on your summary judgment motions. Well, Your Honor, we want the chance to litigate it fully. If they're going to file a summary judgment motion, they have to file the appropriate procedure, and we have to have the ability to respond appropriately as the procedural rules require. But you don't get the right to know. Under the Attorney General's position, you don't get to know where the compounding pharmacy is. That's what the current Attorney General opinion says. I can believe it's right or wrong. I believe it's wrong. But, you know, that is the current rule. And if we wanted to try and get that information, we'd have to attack that issue in order to get it through this litigation, frankly. And then just to clarify one point for the Court, at the time that the Court, we were before the Court in this case when we were at our status conference hearing following Mr. Yow's execution. At that time, the supplier of the compounded pentobarbital was known. There's subsequent litigation with other inmates and other lawyers that's dealt with the supplier issue. It was not litigated by me or my firm or was involved with these appellants whatsoever. It does directly impact them for sure, and if you send this case back, it's an issue that we would have to deal with. But the issue directly before the Court today, frankly, is very narrow. It is whether or not the claims are ripe. And based on this Court's prior precedence, Neville is not distinguishable. There was no statement by the Court in that opinion that made a determination that because that inmate had an execution date, that's why that rule was set forth. It just so happens that those inmates did, and maybe that's the context of why the rule was followed. Therefore, I assert to the Court that these claims are ripe. This case should be sent back to the District Court, regardless of our tough road to hoe, if that is what's before us. But we can say that what's ripe is the current method, not a hypothetical future method, which may not be ripe. I understand where you're coming, Your Honor. It's not ripe, is it? Hypothetical future method. Your Honor, there is a, I believe it was, let me find my notes, so I won't take too long, because I don't have much time left. I think it's an important point, so take your time. Yes, Your Honor. It was actually the 11th Circuit in Arthur v. Thomas, so it's not from this circuit, not from Texas. That court indicated the dismissal of a lethal injection challenge, because it was actually plausible and not speculative that the State of Alabama could change its protocol at any time, and that ability to change the protocol at any time was actually disparate treatment of their ability to bring the case. And so I would assert that it's a tangentially related issue as to ripeness, but the fact that they can just, you know, as my opposing counsel said, abolish the death penalty tomorrow, which we all think is probably pretty absurd and not likely to happen in the State of Texas, but the fact that they can, that the State can just make that decision on its own at any time is actually part of the issue, and I see I'm out of time. Thank you, Your Honor.